UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **JOSIE R. HERNANDEZ** | § | CIVIL ACTION NO. 2:10-CV-186 |
|    **Plaintiff** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **CITY OF CORPUS CHRISTI** | § | |
|    **Defendant** | § | **JURY DEMAND** |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE (*DAUBERT* CHALLENGE TO) THE TESTIMONY OF MEL TUCKER, DR. DAVID FRIEDLAND, AND DR. TRACI JORDAN

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant City of Corpus Christi has filed a motion to exclude the testimony of plaintiff's designated experts, Mel Tucker, Dr. David Friedland, and Dr. Traci Jordan. To avoid repetition, plaintiff intends "proffered expert" where she uses "expert." Whenever plaintiff refers to "experts" in this document, plaintiff means experts who have been designated by the parties to be proffered as experts at trialdc. For the following reasons, plaintiff opposes the motion and respectfully asks that the Court deny it.

### STATEMENT OF FACTS

1

1. Plaintiff Josie R. Hernandez sued the City alleging national origin, race, sex, and age discrimination and retaliation for filing a discrimination complaint. Plaintiff was the sole female captain on the force, having earned the rank on merit alone during a thirty-one year career with the Corpus Christi Police Department. Plaintiff maintains she was denied promotions to commander three times, acting commander once, and assistant police chief once.  Plaintiff also maintains that, given the City's continuing, secretive, and "tap-on-the-shoulder" approach to providing promotional opportunities to persons not of her national origin, race, and gender, the City could have promoted her to the acting police chief position available twice and the commander position it ultimately gave to its errant police chief, after he was demoted in lieu of termination for misconduct connected with the work, and the City could also have promoted plaintiff as an available interim assistant police chief position but elected to keep the position vacant.

2.  Given the City's meandering, varied, and shifting reasons for not promoting plaintiff, to aid the jury in this case, plaintiff retained the services of Mel Tucker, a former police chief (four locales) and a former federal agent. Plaintiff also retained the services of Dr. David Friedland, a certified Human Resource Professional, holding a doctorate in psychology, specializing in Industrial/Organizational psychology.  Plaintiff did not retain psychologist Dr. Traci Jordan as a testifying expert, but, rather, sought Dr. Jordan's counseling

services because of the destruction of her career occasioned by the promotional bypasses. The City does not complain about the education, experience, and occupation of any of plaintiff's experts. Plaintiff maintains that her experts' opinions are relevant and admissible and meet the legally applicable test.

3. The City has filed its designation of experts in which it designates the current Police Chief Troy Riggs, Human Resource Director Cynthia Garcia, and Senior Human Relations Analyst Karen Harling as testifying experts in this case. (City's Designation of Experts, document 28, pages 1-2). They are expected to testify "regarding the City of Corpus Christi policies and procedures, the Corpus Christi Police Department's policies and procedures including but not limited to the General Rules Manual, the Civil Service Commission Rules and Regulations, the applicable provisions of Chapter 143 of the Texas Local Government Code and the Collective Bargaining Agreement entered into by the City and the Corpus Christi Police Officers' Association." (Document 28, pages 1-2). Ms. Garcia and Ms. Harling "may also testify regarding the City's response to charges of discrimination including the charge filed by Plaintiff as well as other matters relating to the claims asserted by Plaintiff in this lawsuit." (Document 28, pages 1-2).

4. Plaintiff counters that her experts, Mr. Tucker and Dr. Friedland, stand ready to rebut the testimony of the City's experts regarding the same subject matter

and within the scope of the expected testimony of the City's expert witnesses. Further, plaintiff maintains that, because her experts successfully rebutted the City's claimed investigation, conclusions, and statements, the City now claims that their testimony would be "more prejudicial than probative," which plaintiff denies. Without waiving the premise that plaintiff has met the applicable *Daubert* standards and will abide by the standards at trial, plaintiff states that her experts can, and are qualified to, testify in rebuttal to the testimony of the City's experts. The City has urged no challenge to plaintiff's experts on that basis.

## APPLICABLE STANDARDS

5. Rule 702 and *Daubert*

Federal Rule of Evidence 702 provides the requirements an expert must meet to testify in a civil action. It states as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

6. The rule enunciated in *Daubert* governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

4

113 S.Ct. 2786 (1993). In *Daubert*, the Supreme Court held that trial courts have a very important gate-keeping function with respect to the admissibility of expert testimony and, thus, are required to analyze whether their testimony is likely to assist the trier of fact. *Daubert*, 509 U.S. at 595, 589; *Kumho Tire C. Ltd. v. Carmichael*, 526 U.S. 137 (1999). The Court must assure that the expert witness "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Seatrix, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 372 (5th Cir. 2000) (quoting *Kumho*, 526 U.S. at 152).

7. Qualifications

Before a Court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his knowledge, skill, experience, training, or education. Fed. R. Evid. 702; *see* Fed. R. Evid. 104(a); *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009).

8. Sufficient Facts

A party seeking to introduce expert testimony is required to demonstrate that the testimony is based on sufficient facts. Fed. R. Evid. 702.

9. Reliability

A court determines the reliability of an expert's testimony "by assessing whether the reasoning or methodology underlying the testimony is valid." *Knight*

*v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592-93).

  10.  <u>Relevancy</u>

  Relevancy under "Rule 702 requires that expert testimony assist the trier of fact to understand the evidence or to determine a fact in issue." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002).

## **ANALYSIS**

  11.  Plaintiff does not waive her wish to call Mr. Tucker and Dr. Friedland as expert witnesses in her case-in-chief but wishes to call them to testify in rebuttal to the proffered testimony of the City's experts.  Plaintiff will not adduce any evidence to the jury on any matter contrary to rule 702 and *Daubert*.  Plaintiff will also approach the bench, should the need require, before adducing any evidence objectionable to the City on *Daubert* grounds.

  12.  For purposes of prompt response in opposition to the City's instant motion, plaintiff respectfully states that the City's challenge is negated by its own designation of experts who are expected to testify as to matters that plaintiff's experts can reasonably be expected to rebut.   Plaintiff further states that the gist of the City's challenge is essentially based on credibility and not admissibility.

### **Mel Tucker**

13. The City challenges the relevance and reliability of a former police chief, Mel Tucker, while designating its current police chief as an expert. Plaintiff responds that, just as the City expects the testimony of its current police chief Troy Riggs to provide meaningful assistance to the jury, so is that of Mr. Tucker. After sixteen months as chief, the only time Chief Riggs has ever served in such capacity, the City expects him to testify as the City's expert regarding material issues of fact in this case. Having served as police chief on four different occasions, Mr. Tucker can offer testimony to rebut those of a novice police chief, for example, who is essentially new at his job and probably still learning on the job.

14. Importantly, the City cannot dispute that Chief Riggs has not promoted a single Mexican-American female or any female to high-level positions within the Corpus Christi Police Department. Further, the City cannot dispute that, when the current police chief made five high level promotions in January 2011, he failed to promote a single woman. The City's continuing promotional practices that, at a minimum, exclude Mexican-American females such as plaintiff as well as all females, is central to plaintiff's complaint. If the current police chief's testimony and that of the human resources staff will aid the jury, plaintiff maintains that so will Mr. Tucker's. Because their testimony is expected to conflict, a reasonable jury will decide who to believe.

15. Similarly, Mr. Tucker's testimony can assist the jury to rebut former police chief Bryan Smith's testimony. The City does not dispute that Mr. Smith is the City's key witness. The City cannot dispute that Mr. Smith failed to promote a single Mexican-American male or female to high-level positions within the department during his administration of the department. The City's and plaintiff's interpretations of applicable policies and procedures and their application by the former police chief (as well as the current police chief) are central to the facts in material dispute in this case. As a former police chief charged with interpretation and application of policies and procedures, Mr. Tucker's views are relevant. Not only did he apply policies and procedures, but he also worked with human resource directors to properly execute them.

16. The City contends that "a jury can evaluate the evidence for itself and determine whether Chief Smith disliked Mexican-Americans or disrespected Mexican-American females." Importantly, a document highly objectionable to the City and investigation is germane to this issue. Mr. Tucker, as a former police chief and former federal agent, can reliably testify as to matters the City ignored in retaining the former police chief in its employ. Further, in rebuttal, his federal experience is expected to aid the jury in matters related to former chief Smith's testimony in the past and reasonably expected at trial regarding the processes and procedures for filing a complaint with the FBI.

17. While the City challenges the reliability of Mr. Tucker's testimony, it endorses the reliability of its own certified peace officer, whose claimed expertise pales in comparison to that of Mr. Tucker's, which the City cannot dispute. Plaintiff respectfully submits that, to the extent that the City finds its novice police chief's expert testimony reliable, the same standard should apply to Mr. Tucker, who has much more experience as police chief.

18. Mr. Tucker identified in his report the materials and reports used to establish his assessment. There likely will be a dispute between the experts that is to be reconciled by the jury. The sum of the challenges to his report involves complaints raised by the City that the City can pursue on cross examination or through its own rebuttal witness.

19. The City's complaint that Mr. Tucker's testimony is unreliable because it is based only on facts relied upon by the plaintiff is unfounded. The City offers nothing to prove the veracity of its statement. The City cannot dispute that its designated expert, Ms. Harling, made so-called "legal conclusions" in official documents to the E.E.O.C. unequivocally denying discrimination. Among others, Mr. Tucker reviewed the complete E.E.O.C. file containing the claimed expert opinions of the City's designated expert, Ms. Harling, and the City's representations and statements to that federal agency. The City's official

statements to the E.E.O.C. unequivocally denying discrimination have never been, nor can they be, "facts upon which plaintiff" has relied.

20. Nothing in Mr. Tucker's report supports the City's complaint regarding the International Association of Chiefs of Police manual. The manual is textual reference and authority. In stark contrast to the absence of accountability, processes, and procedures regarding promotions within the police department, the manual should be a ready reference for any police chief.

21. The City complains of legal conclusions without specifying what they are. In contrast, the City's own designated expert offered legal conclusions to the E.E.O.C. Any claimed conclusions the City challenges are reasonable rebuttals to those the City provided the E.E.O.C. and reasonably expected to be offered at trial.

22. The City challenges Mr. Tucker's testimony based on rule 403, ostensibly because of harm. Fed. R. Evid. 403. This is mere conjecture and an unsubstantiated conclusion; it is also premature. The City neither shows harm nor what the unfair prejudice would be since it has its own experts, who could also mislead the jury by their testimony.

23. Without question, Mr. Tucker is well qualified and well credentialed and has used the most relevant data for his analysis, which is reliable. As to the challenges based on prior cases, the City's contentions are unavailing. The facts and circumstances of the cases are dissimilar as are the reports. In addition, while

characterizing "some of Mr. Tucker's" opinions as "ridiculous," the City does not produce them. Further, the Court is not bound by the claimed precedent. Indeed, the City's challenges to Mr. Tucker go only to weight and credibility, not to admissibility.

24. For the above reasons, plaintiff respectfully requests that the Court deny the City's motion to exclude Mr. Tucker's testimony.

### Dr. David Friedland

25. The City generally complains that Dr. Friedland is not qualified to offer the "legal conclusions" he offers. The City does not specify which conclusions it claims are legal. In contrast, the City cannot dispute that its own expert, Karen Harling, made claimed "legal conclusions" when she filed documents with the E.E.O.C. stating that no discrimination occurred and provided a statistical analysis to support her "legal conclusions." Because Ms. Harling is expected to testify similarly at trial, Dr. Friedland's testimony will likely rebut that of the City's expert. Dr. Friedland is also reasonably expected to rebut Ms. Harling's "legal conclusions" based on a claimed statistical analysis.

26. The City also complains that Dr. Friedland is not qualified to provide the legal interpretations of the collective bargaining agreement. Plaintiff will not offer evidence that require a law license. Whatever the City's standard is,

however, the City did not apply the standard to Ms. Harling, the City Manager Angel Escobar (not designated as an expert), the former police chief Bryan Smith, who, the City cannot dispute, have all offered opinions regarding the claimed "legal interpretations" of the collective bargaining agreement. Similarly, the City has identified the current police chief and Ms. Harling to testify regarding the collective bargaining agreement and Chapter 143. The reasonable inference is that the opinions are not legal interpretations as the City posits.

27. As a further example of the City's double standard toward plaintiff's experts, the City cannot dispute that, during the E.E.O.C. investigation, Ms. Harling concluded, among others, that the City did not engage in disparate impact discrimination. She made that conclusion after she conducted her claimed statistical analysis. If her claimed expertise qualified her to reach that conclusion and file that document with the E.E.O.C. for and on behalf of the City, then, given the dearth of his experience, education, and training, Dr. Friedland can aptly rebut it. Dr. Friedland is also reasonably expected to rebut the claimed "legal conclusions" that the City's expert and lay witnesses, Mr. Harling, Mr. Escobar, and Mr. Smith will and have offered as well as that reasonably anticipated that the current police chief will offer regarding the collective bargaining agreement.

28. According to the City's expert designation, Ms. Harling and the current police chief are both expected to offer expert testimony regarding, among others,

Chapter 143 of the Local Government Code and the collective bargaining agreement. Because Dr. Friedland's outstanding credentials in his specialized area surpass those of Ms. Harling and the current police chief as well as those of Bryan Smith and Mr. Escobar, Dr. Friedland can reasonably be expected to reliably rebut the City's experts' testimony.

29. Although the City complains about Dr. Friedland's opinion regarding the secrecy involved in the City's promotional process, it does not deny that the promotions are in secret and that its police chiefs are accountable to no one for their "tap- on- the- shoulder" promotions. Plaintiff reasonably anticipates that, at trial, the City's proffered experts will testify, as they all have been unconditionally supportive of the process, that the secret process is proper in a municipality that has a classified service, rules and regulations, policies and procedures, and an equal opportunity directive. Dr. Friedland can reasonably be expected to reliably rebut the City's experts' testimony.

30. Like the challenge against Mr. Tucker, the City again does not identify or apply the "erroneous legal standard" it claims is misapplied by plaintiff's experts. Measured against the City's own expert witnesses, however, the standard the City requires against plaintiff's experts is a higher, unidentified standard. Because the City has offered nothing to support a heightened standard as to plaintiff's experts, the challenge is unfounded. The City cannot dispute that, like

Mr. Tucker, Dr. Friedland identified the materials and reports used to establish his assessment. There likely will be a dispute between the experts that is to be reconciled by the jury. Further, the sum of the challenges to his report involves complaints raised by the City that the City can pursue on cross examination or through its own rebuttal witness.

31. The City's complaint that Dr. Friedland's testimony is unreliable because it is based only on facts relied upon by the plaintiff is incorrect. The City offers nothing to prove the veracity of its statement. The City cannot dispute, that Dr. Friedland reviewed the complete E.E.O.C. file containing the claimed expert opinions of the City's designated expert, Ms. Harling, and the City's representations and statements to that federal agency. The City's official statements to the E.E.O.C. have never been "facts upon which plaintiff" has relied.

32. Like the rule 403 challenge against Mr. Tucker, the City again concludes harm and prejudice, without more, against Dr. Friedland. The City has not shown either harm or prejudice; the challenge is premature. It has also not demonstrated that its own witnesses will not create the harm the City purports to prevent.

33. With regard to any claimed sustained expert challenge, plaintiff states that the facts, circumstances, reports, and opinions are dissimilar. The Court is not bound by the claimed precedent. The City's challenge is without merit.

34. Without question, Dr. Friedland is well qualified and well credentialed and has used the most relevant data for his analysis, which is reliable. The City's challenges to Dr. Friedland go only to weight and credibility, not to admissibility. Indeed, the City's challenges to Dr. Friedland go only to weight and credibility, not to admissibility.

35. For the foregoing reasons, plaintiff respectfully requests that the Court deny the City's motion to exclude his testimony.

### **Dr. Traci Jordan**

36. The City cannot dispute that it is aware that Dr. Jordan is not a retained expert. Even so, the City holds her to the standard of a retained expert. The City's attorney-in-charge has personal knowledge of a case, unknown to plaintiff and unrelated to this case, in which he deposed Dr. Jordan, as an adverse witness. Because in expert disclosures in this case, Dr. Jordan invoked the doctor-patient privilege ostensibly including that unrelated case, the City complains that Dr. Jordan and plaintiff failed to disclose additional matters about, at a minimum, the unrelated case in this case.

37. Inexplicably, the City has not shown that Dr. Jordan must violate the doctor-patient privilege in order to provide the City the information it already has as to at least one case. As stated, the City's counsel deposed Dr. Jordan in the

unrelated case. Even so, the City seeks exclusion of plaintiff's expert for allegedly not providing the City information plaintiff does not and cannot have under HIPPA, which information as to one case the City already has by its prior deposition of Dr. Jordan in a case unknown to plaintiff.

38. The City cannot dispute that it has its own HIPPA policy and procedure. (*See*, City of Corpus Christi City Policy HR 29.0). The City cannot dispute that its own policy negates the contention it urges now, namely, that Dr. Jordan must violate her patients' privacy rights and privileges to satisfy the City's claimed entitlement to private, privileged information.

39. The City's challenge Dr. Jordan on these grounds is not within the scope of *Daubert*.

40. Again, the heightened standards the City asks the Court to apply to plaintiff's two retained experts and now to her un-retained expert are unsupported in law. The City has shown no authority for its heightened standards toward plaintiff's experts.

41. The City's objections and challenges to Dr. Jordan have no basis in law or in fact.

## CONCLUSION AND PRAYER

42. In the midst of responding to the City's summary-judgment motion, plaintiff files this her opposition to the City's *Daubert* challenge within five days' notice of the City's expert designation. Plaintiff reasonably anticipated the City's expert designation of human resource personnel Cynthia Garcia and Karen Harling as well as police chief Troy Riggs. The City has not disputed that Dr. Friedland has the human resource expertise and Mr. Tucker has the police chief expertise that qualify them to testify in this case.

43. The City cannot dispute that, for its requested hearing far in advance of the trial date in this case, at great expense, Dr. Friedland would travel from California and Mr. Tucker would travel from North Carolina and either or both would require, without limitation, plane fare and accommodations. Dr. Jordan resides in the district. The City cannot dispute that it is requesting a hearing in the midst of plaintiff's summary-judgment timeline.

44. As gatekeeper for determining an expert's reliability, the Court has the discretion to avoid any unnecessary briefings or proceedings in ordinary cases. *Kumho*, 526 U.S. at 152-153. Because, respectfully, reliability in this case "can be taken for granted"*, Kumho*, and because proceedings *in limine* are available to the City, plaintiff respectfully requests that, should the Court not deny the City's *Daubert* challenge, the matter not be set for hearing until at or immediately before the time of trial.

40. For these reasons, plaintiff prays that the Court deny the City's *Daubert* challenge to the expert testimony of Mel Tucker, Dr. David Friedland, and Dr. Traci Jordan.

> Respectfully submitted
>
> /s/Errlinda Moreno Castillo
> Errlinda Moreno Castillo
> SBN 03984810
> Federal No. 8248
> 999 E. Basse Road 180-413
> San Antonio, TX 78209
> (210) 300-8074
> Attorney in Charge for Plaintiff

## CERTIFICATE OF SERVICE

On March 28, 2011, I served a true and correct copy of this document to James McKibben, Attorney in Charge for Defendant City of Corpus Christi by e-filing.

> /s/ Errlinda Moreno Castillo
> Errlinda Moreno Castillo