UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOSIE R. HERNANDEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-186 |
| | § | |
| CITY OF CORPUS CHRISTI, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

On this day came on to be considered Defendant's Motion for Summary Judgment.  (D.E. 25.)  For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.

**I.      Jurisdiction**

This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff has brought claims under, inter alia, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA").  The Court has supplemental jurisdiction, 28 U.S.C. § 1367, over Plaintiff's state law causes of action.

**II.      Factual Background**

This is an employment discrimination and retaliation case brought by Plaintiff Josie Hernandez against her former employer, the City of Corpus Christi.  The Court summarizes the relevant facts in this case as follows.

Plaintiff Josie Hernandez began her career with the Corpus Christi Police Department ("CCPD") in 1977, when she was sworn in and assumed her duties as a patrol officer.  She was promoted to police lieutenant on December 7, 1993 and to

captain on October 24, 2000.  (D.E. 25-4; D.E. 30-2 at 1.)  Plaintiff contends that she should have been promoted beyond the position of captain (namely, to the positions of commander, assistant chief, and police chief), but was passed over for numerous promotions due to her gender (female), national origin (Mexican-American), race (Hispanic), and age (over forty).  (D.E. 21.)

In the CCPD, promotions to commander and assistant chief are addressed under the Collective Bargaining Agreement ("CBA") between the City of Corpus Christi and the Corpus Christi Police Officers' Association, which was in effect from August 1, 2006 to July 31, 2010.  According to the CBA, Section 13, promotion to commander and assistant chief positions are exempt from the competitive examinations requirement and made by appointment by the police chief, at his discretion.  For the position of police commander, the candidate must be a lieutenant or captain with two years of experience in that rank immediately prior to appointment, and have obtained a bachelor's degree within 48 months of the appointment.  For the assistant chief position, the candidate must have four years of experience in the rank of lieutenant, captain, or commander immediately prior to appointment, and must have obtained a master's degree within 48 months of appointment.  The assistant police chief and police commander positions are not positions to which an individual may formally apply.  (D.E. 25-6 at 38-40; D.E. 30-13 at 1.)

Plaintiff specifies several instances in which other, allegedly less qualified individuals outside the protected class were promoted to commander and assistant chief positions over her.  Most of these promotions occurred during the period in which Bryan

Smith was Police Chief of CCPD (D.E. 25-5), and during the tenure of City Manager Angel Escobar.[1]  Specifically, Plaintiff complains about the following promotions:

(1) Promotion of Captain John Moseley (white male) to Commander (April 16, 2007) and then to Acting Police Chief (August 17, 2009) (See D.E. 25-26.)

(2) Promotion of Captain Mark Schauer (younger white male) to Commander (September 3, 2008) (See DE. 25-8.)

(3) Promotion of Lieutenant Heidi Frese (younger non-Mexican American female) to Commander (September 3, 2008) (See D.E. 25-9.)

(4) Promotion of Mike Walsh (white male) to Assistant Police Chief (September 3, 2008), Acting Police Chief (November 15, 2008), and a job offer for Police Chief.  (See D.E. 25-7; D.E. 25-13; D.E. 25-25.)

(5) Promotion of David Cook (younger white male) to Acting Police Commander (September 3, 2008) (See D.E. 25-10; D.E. 25-16); and

(6) Demotion of Police Chief Bryan Smith (younger white male) to Commander (January 5, 2009) (See D.E. 25-15.)

(D.E. 21 at 2-3.)  Plaintiff claims that she also experienced a hostile work environment after each promotional bypass, allegedly suffering "insubordination, alienation, exclusion from meetings," and other behaviors.  (D.E. 21 at 6.)  Believing that these promotional decisions were motivated by improper discriminatory reasons, Plaintiff filed an EEOC Charge of Discrimination against the City on September 16, 2008.  In the EEOC Charge, Plaintiff asserted gender, national origin, and age discrimination (but did not specifically assert race discrimination).  (D.E. 25-19; D.E. 25-20; D.E. 25-50; D.E. 25-61.)

---

[1] Bryan Smith became Police Chief on July 11, 2006, and Angel Escobar became Interim City Manager on September 1, 2008. (D.E. 25-5; D.E. 25-48.)  He was later promoted to City Manager.

On November 4, 2008, Plaintiff advised Chief Smith of her intent to retire from CCPD effective January 4, 2009, and Chief Smith approved her retirement.  (D.E. 25-11; D.E. 25-14.)  Soon thereafter, Chief Smith became embroiled in a personal scandal, and on November 15, 2008, Interim City Manager Escobar placed Smith on administrative leave. (D.E. 25-12; D.E. 25-48 at 4-5.)  Assistant Chief Walsh was assigned to serve as Acting-in-Charge Police Chief.  Although Chief Smith initially decided to retire rather than be demoted to police commander, he subsequently changed his mind and on January 5, 2009, City Manager Escobar[2] demoted him to the position of Police Commander, the position Smith held prior to his promotion.[3]  Plaintiff's retirement became effective on January 5, 2009.  (D.E. 25-47; D.E. 25-48.)[4]

Several months later, in June 2009, the City received several open records requests from members of the media.  Specifically, on June 9, 2009, Mike Gibson of KIII-TV (the ABC affiliate based in Corpus Christi), requested "[a]ny and all information regarding complaints made by Josie Hernandez and Isaac Valencia." (D.E. 25-17; D.E. 25-18.)[5]  In response, the City released to Mr. Gibson the EEOC filings by Hernandez and Valencia.  (D.E. 25-19.)   Shortly thereafter, on June 18, 2009, Sara Foley of the Corpus Christi Caller-Times also submitted an open records request to the City, requesting a copy of Ms. Hernandez's EEOC Complaint.  (D.E. 25-20; D.E. 25-21; D.E.

---

[2] On December 16, 2008, the City Council appointed Escobar to serve as City Manager. (D.E. 25-48 at 2.)
[3] This demotion was performed pursuant to Texas Local Government Code Section 143.013(c), which provides in part, "if a person is removed from the position of department head, the person shall be reinstated in the department and placed in a position with a rank not lower than that held by the person immediately before appointment as department head.  The person retains all rights of seniority in the department."  Tex. Local Gov. Code § 143.013(c).  (D.E. 25-48 at 5.)
[4] Subsequently, on August 17, 2009, City Manager Escobar terminated Assistant Police Chief Walsh's temporary assignment of Acting in Charge Police Chief and temporarily assigned Police Commander John Moseley as Acting in Charge Police Chief.  (D.E. 25-48 at 3-5.)
[5] Officer Isaac Valencia has filed a separate suit in this Court, although it makes similar allegations of discrimination.  See Valencia v. City of Corpus Christi, 2:10-cv-372.

25-22; D.E. 25-23.)  The City complied with this request as well, providing both a copy of the Notice of the Charge of Discrimination and the Charge of Discrimination.  The release included Plaintiff's date of birth.  (D.E. 25-24.)  Plaintiff soon discovered the release of this information, and on June 25, 2009, sent a letter to EEOC Investigator John Ahlstrom complaining about it.  (D.E. 25-57.)  Investigator Ahlstrom responded that the release did not violate the law, but that Plaintiff could amend her charge to include a claim of retaliation based upon that release.  (D.E. 25-58.)   Plaintiff amended her charge on July 24, 2009 to assert claims of retaliation, relating to the release of her EEOC file to the media, and for the instances in which information contained in that file was aired or printed.  (D.E. 25-59.)

After investigating Plaintiff's claims, the EEOC issued a Notice of Right to Sue and Dismissal on February 10, 2010, but made no finding of discrimination.  (D.E. 25-60.)  This lawsuit followed.

## III.    Procedural Background

Plaintiff originally brought this action in the 214th Judicial District Court of Nueces County, Texas, Cause No. 10-02036-F on April 29, 2010.  Defendant was served on May 5, 2010, and removed this action to this Court on June 3, 2010.  (D.E. 1.)  Plaintiff filed her First Amended Complaint on December 30, 2010.  (D.E. 21.)  As discussed herein, Plaintiff brings claims for discrimination, retaliation, breach of contract, and seeks a declaratory judgment as to whether the release of her birthdate was an invasion of privacy.  Defendant filed its Motion for Summary Judgment on March 15,

2011.  (D.E. 25.)   The motion has now been fully briefed and is ripe for adjudication. (D.E. 30; D.E. 40; D.E. 44.) [6]

## IV.   Discussion

Defendant's Motion for Summary Judgment argues that (1) Plaintiff's claims of race, age, gender, and national origin discrimination under Title VII, the ADEA, and the TCHRA should be dismissed both on procedural and substantive grounds; (2) Plaintiff's request for declaratory judgment should be denied because the City complied with applicable law when it released the EEOC charge and Plaintiff's birthdate, (3) Plaintiff's claims under 42 U.S.C. § 1981 and 1983 should be dismissed both on procedural and substantive grounds, and (4) Plaintiff's breach of contract claim should be dismissed on the merits.  (D.E. 25.)

The Court briefly considers the applicable summary judgment standard, then turns to the various arguments that Defendant has raised in support of its motion for summary judgment.

---

[6] Plaintiff's Motion for Leave to File Late Plaintiff's Response Opposing Defendant's Motion for Summary Judgment is GRANTED.  (D.E. 31.)   Plaintiff has also filed a Motion to Strike (D.E. 34).  In that motion, she first argues that Exhibits 1-A through 1-O, 1-Q, 1-R, 1-T, 1-V, 1-W, 1-X, 1-Y, 1-Z, and 1-AA through 1-RR are not properly authenticated and therefore inadmissible because the affidavit of record custodian Armando Chapa is insufficient under Federal Rule of Evidence 902(11).   Plaintiff also contends that Exhibits 1-EE through 1-QQ are irrelevant and should be struck.  Plaintiff also makes this argument in her summary judgment response.  (D.E. 30 at 5.)   Defendant responds that Plaintiff's objection is "without merit and frivolous," procedurally flawed, and in any event the exhibits comply with both the business records and public records exception to the hearsay rule.  (D.E. 40 at 3 (citing Fed. R. Evid. 803(6); 803(8); see also D.E. 43.).   The Court finds Plaintiff's authentication argument without merit.  Under Federal Rule of Evidence 901, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Fed. R. Evid. 901(a).  Thus, "Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be. The standard for authentication is not a burdensome one."  U.S. v. Jackson, __ F.3d __, 2011 WL 1002195, at *3 (5th Cir. Mar. 22, 2011).  Here, the Court finds that Armando Chapa's affidavit, stating that the exhibits at issue are "official records of the City of Corpus Christi, Texas and of which [he], as City Secretary, [is] designated the Records Management Officer," (D.E. 25-2) is sufficient to authenticate the documents.  Moreover, the Court finds Defendant's explanation of the relevance of Exhibits 1-EE through 1-QQ sufficient for relevancy purposes. Thus, the Court DENIES Plaintiff's Motion to Strike Summary Judgment Affidavits and Exhibits for Want of Authentication.  (D.E. 34.)

### A.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The substantive law identifies which facts are material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996).  A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case."  Rivera, 349 F.3d at 247.  The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").

Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  Rubinstein v. Admrs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**B.     Discrimination Claims**

**1.     Applicable Law**

Title VII makes it "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . sex or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA forbids "an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); see Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004).  Similar to its federal counterparts, the Texas Commission on Human Rights Act ("TCHRA"), prohibits employer discrimination directed at the "terms, conditions, or privileges of employment" because of race, color, disability, religion, sex, national origin or age.   Tex. Lab. Code § 21.051(1).  "The [Texas] Legislature intended to correlate state law with federal law in employment discrimination cases when it enacted the TCHRA.  In discrimination cases that have not been fully tried on the merits, [Texas courts] apply the burden-shifting analysis established by the United States Supreme Court [in McDonnell Douglas]."  Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2009) (citations omitted); see Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 403 n.2 (5th Cir. 1999) ("[T]he law governing claims under the TCHRA and Title VII is identical," and the statutory

bases are "functionally identical.").  Indeed, one of the purposes of the Act is to "provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments."  Tex. Lab. Code § 21.001.  Thus, the Court interprets and considers Plaintiff's state and federal law claims together.[7]

"A claim of employment discrimination can be proven through direct or circumstantial evidence. Where . . . the plaintiff does not produce any direct evidence of discrimination, we apply the well-known McDonnell Douglas burden-shifting framework as modified and restated . . . ."  Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007); see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  "Under the modified McDonnell Douglas approach, the plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the plaintiff's protected characteristic."  Id. at 411-12. It is well established that "[t]he standard of proof for Title VII discrimination claims also applies to . . . ADEA claims."  Roberson, 373 F.3d at 651; Monteverde v. New Orleans Fire Dep't, 124 Fed. Appx. 900, 904 (5th Cir. 2005).

---

[7] The Court notes that Plaintiff has also stated claims under Chapter 24, Article IV of the Municipal Code of the City of Corpus Christi.  (D.E. 21 at 31, 33.)  Chapter 24, Article IV of the Code states, "[i]t shall be an unlawful employment practice for an employer: To fail or refuse to hire or to discharge an individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of race, color, disability, religion, sex, national origin or age."  C.C. Mun. Code § 24-82(a)(1). The enforcement section does not specifically provide for private lawsuits, and no case law is available interpreting this section.  C.C. Mun. Code § 24-83.  It appears that enforcement may be accomplished through the TCHRA, Title VII, and the ADEA.  The Court therefore concludes that the Corpus Christi Municipal Code does not state a separate cause of action, and therefore evaluates Plaintiff's claims under federal and state law only.

A Title VII plaintiff must exhaust administrative remedies by filing an administrative charge of discrimination with the EEOC within 300 days of learning of the unlawful conduct.  42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109, 113-14 (2002); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir. 1998).  Filing a timely charge with the EEOC "is a precondition to filing suit in district court."  Taylor v. Books A Million. Inc., 296 F.3d 376, 379 (5th Cir. 2002).  "The scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Thomas v. Texas Dept. of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000).  Similarly, the TCHRA "requires a complainant to first exhaust his administrative remedies before filing a civil action."  Lueck v. State, 325 S.W.3d 752, 761 (Tex. App.–Austin 2010).  This administrative review process begins when a complainant files a complaint with the Texas Workforce Commission civil rights division.  Tex. Lab. Code § 21.201; Waffle House, Inc. v. Williams, 313 S.W.3d 796, 804 (Tex. 2010).  Under Texas law, the complainant must bring his administrative claim within 180 days of the date that the alleged unlawful practice occurred.  Tex. Lab. Code § 21.202(a).  Once that occurs, a Plaintiff must bring suit within two years of filing the administrative complaint.  Id. § 21.256; Williams, 313 S.W.3d at 804.  Courts have generally considered the filing of a charge with the EEOC to satisfy state administrative exhaustion requirements as well, in light of worksharing agreements between the agencies and the desire to avoid duplication of efforts.  See, e.g., Vielma v. Eureka Co., 218 F.3d 458, 462-63 (5th Cir. 2000); Burgmann Seals America, Inc. v. Cadenhead, 135 S.W.3d 854, 857 (Tex. App.–Houston

[1 Dist.], 2004) ("We hold that providing the name of the TCHR and checking the box for simultaneous filing is the equivalent of filing with the TCHR.").

### 2.      Application

Defendant argues that Plaintiff's discrimination claims must be dismissed both because she has failed to exhaust her administrative remedies, and because they lack merit.  The Court considers the procedural aspects of the claim first.

### a.      Exhaustion of Administrative Remedies

Defendant argues that Plaintiff may not assert certain claims due to her failure to exhaust administrative remedies with respect to those claims.  Those claims are (1) any discriminatory acts that occurred before November 20, 2007; (2) race discrimination; (3) constructive discharge; and (4) the promotion of Commander Moseley to Acting Police Chief on August 17, 2009.  These claims either fall outside of the 300-day period for filing, or were not alleged in the EEOC Charge, according to Defendant.  (D.E. 25 at 9-10; D.E. 40 at 2-3.)  Plaintiff responds first that the Lilly Ledbetter Fair Pay Act of 2009 amends Title VII and the ADEA as to limitations, such that the limitations period restarts with every wage, benefit, or other compensation that "resulted in whole or in part" from a discriminatory decision or practice.  Thus, each paycheck and retirement check Plaintiff received that did not include the higher compensation afforded the City's promoted officials restarts the statutory period.  (D.E. 30 at 7-8; D.E. 44 at 16-17.)  Plaintiff also contends that she did in fact allege race discrimination, at least with respect to an Employment Discrimination Intake Questionnaire filed with the Corpus Christi Human Relations Commissions, and claimed constructive discharge when she stated in her July 24, 2009 letter to EEOC Investigator John Alhstrom, "[h]ad the City not discriminated

against me, I would still be working there."  (D.E. 30 at 8.)  Finally, Plaintiff contends that her EEOC Charge encompasses Moseley's promotion because she alleged systematic promotions to "high level job[s]," the scope of her Title VII suit could extend as far as the scope of the EEOC investigation that could reasonably grow out of the administrative charge, and the claim is part of a pattern of discrimination.  (D.E. 30 at 8-9.)  The Court considers each in turn.

### i. Statute of Limitations

First, Defendant is correct that claims occurring outside the 300 day period cannot form the basis of a discrimination claim.  42 U.S.C. § 2000e-5(e)(1); <u>National R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 109, 113-14 (2002); <u>Huckabay v. Moore</u>, 142 F.3d 233, 238 (5th Cir. 1998).  As Plaintiff filed her EEOC Charge on September 16, 2008, the 300-day period extends back to November 20, 2007.  Any events occurring before this time are barred.  Thus, Plaintiff cannot state a claim for discrimination based upon the April 2007 promotion of Captain Moseley to commander, nor any other events that preceded November 20, 2007.

Plaintiff's reliance upon the Lilly Ledbetter Fair Pay Act of 2009 (the "Act" or "FPA") is misplaced.[8]  Many courts, including others within this district, have concluded that the Act does not affect the statutory period for failure to promote claims.  In <u>Harris v.</u>

---

[8] The Act, which is retroactive to May 28, 2007, provides:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

42 U.S.C. § 2000e-5(e)(3)(A).

Auxilium Pharmaceuticals, Inc., the court explained, "[a] number of other district courts have distinguished failure to promote claims from compensation claims and found that, even after the enactment of the FPA, the failure to promote claims are still time-barred if the plaintiff does not file an EEOC complaint within 300 days of the discriminatory action. . . . [T]he Court finds that, in the instant case, [plaintiff's] failure to promote claims do not challenge a 'compensation decision' as contemplated by the FPA . . . . The Court finds that the 300 day statute of limitations applies to [plaintiff's] failure to promote claims."  664 F. Supp. 2d 711, 745-46 (S.D. Tex. 2009), vacated as to FLSA findings only, 2010 WL 3817150 (S.D. Tex. Sep. 28, 2010) (citing Vuong v. New York Life Insurance Company, 2009 WL 306391, at *7-9 (S.D.N.Y. 2009); Grant v. Pathmark Stores, Inc., 2009 WL 2263795, at *7-9 (S.D.N.Y. July 29, 2009); Rowland v. Certainteed Corporation, et al, 2009 WL 1444413, at *6 (E.D. Penn. May 21, 2009); Richards v. Johnson & Johnson, 2009 WL 1562952, at *9 (D.N.J. June 2, 2009).) Although the Fifth Circuit has not yet directly addressed this issue, it has approvingly cited Harris in concluding that the FPA "does not apply to discrete acts," which would necessarily include failures to promote.   Tillman v. Southern Wood Preserving of Hattiesburg, Inc., 377 Fed. Appx. 346, 349-50 (5th Cir. 2010) (citing Harris).

    In light of the above, the Court concludes that Plaintiff's time-barred claims are not saved by the Lilly Ledbetter Fair Pay Act, and that all claims that are based upon discrete acts occurring before November 20, 2007 are time-barred.  Thus, the April 16, 2007 promotion of John Moseley to Commander is not actionable, but Plaintiff's claims with respect to the other promotions at issue may proceed.

### ii.     Race Discrimination

Second, Defendant is also correct that Plaintiff did not allege race discrimination in her EEOC Charge.  (D.E. 25-19; D.E. 25-20; D.E. 25-50; D.E. 25-61.)  In response, Plaintiff references a complaint she filed with the Employment Discrimination Intake Questionnaire filed with the Corpus Christi Human Relations Commissions, which is of very poor quality and does not provide a date on which it was filed, or any other relevant information.  (D.E. 30-8.)[9]

Nevertheless, the fact that Plaintiff did not specifically reference race discrimination in her EEOC charge does not preclude her race-based claim.  As noted above, "[t]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  Thomas, 220 F.3d at 395.  Thus, a court may have jurisdiction over a plaintiff's "race discrimination claim only if it is sufficiently related to [her] national origin discrimination cause of action that it reasonably would have fallen within the scope of the EEOC investigation into [the plaintiff's] allegation of national origin discrimination."  Magana v. Tarrant/Dallas Printing, Inc., 1998 WL 548686, at *2 (N.D. Tex. Aug. 21, 1998).  The Fifth Circuit has explained, "[i]n some contexts, national origin discrimination is so closely related to racial discrimination as to be indistinguishable."  Bullard v. OMI Georgia, Inc., 640 F.2d 632, 634 (5th Cir. 1981).  Courts thus will treat a national origin discrimination claim as a racial discrimination claim, or vice versa, when the national origin and race may be correlated.  See Nwoko v. Texas Dept. of Protective and Regulatory Services, 2000 WL 1006759, at *5 (N.D. Tex.

---

[9] As Defendant notes, this exhibit is incomplete and not properly authenticated.  (D.E. 40 at 17.)  The Court does not rely upon this exhibit in ruling upon Plaintiff's racial discrimination claim.

2000) ("As a person of Nigerian heritage, Nwoko is likely to be racially grouped or identified with blacks, and therefore her national origin claim can be correlated with her race claim. For this reason, issues of racial discrimination could be reasonably expected to grow from her charge of [national origin] discrimination.").   The Court here finds enough of a relationship between Plaintiff's national origin (Mexican) and race (Hispanic) to conclude that Plaintiff has exhausted her administrative remedies with respect to both claims.   Indeed, Plaintiff's Charge of Discrimination states a claim of national origin discrimination, but also states "I was bypassed for promotion because I am a Hispanic female over 50."  (D.E. 25-56 at 5.)  Along the same lines, Defendant's EEOC officer Karen Harling responded to "race" allegations in Plaintiff's EEOC Charge by using classifications for "Hispanic" and "white" rather than Mexican-American or some other nationality in the "national origin" column in her EEOC Response.  (D.E. 40-4; 40-6.)   Plaintiff's Title VII complaint of race discrimination "can reasonably be expected to grow out of the charge of" national origin discrimination.  Thomas, 220 F.3d at 395.  Plaintiff has thus exhausted her administrative remedies with respect to both race and national origin discrimination.

### iii.    Constructive Discharge Claim

Defendant urges dismissal of Plaintiff's constructive discharge claim because it is unexhausted.  However, the Court notes that Plaintiff amended her charge on July 24, 2009, in a letter to EEOC Investigator Ahlstrom.  In that amendment she states, "I believe the City has also engaged in the conduct to chill my right to continue to investigate past and current discriminatory practices in the police department.  Had the City not discriminated against me, I would still be working there."  (D.E. 30-9 at 2).)  Defendant

argues, "[a] cursory statement by Plaintiff that she would still be working for the City had it not discriminated against her can not reasonably be interpreted to be an assertion of a constructive discharge claim," and notes that the EEOC investigation did not include any constructive discharge conduct.  (D.E. 40 at 6.)

The Fifth Circuit has explained that EEOC charges are to be accorded "liberal construction," "especially those by unlawyered complainants."  Fellows v. Universal Restaurants, Inc., 701 F.2d 447, 452 (5th Cir. 1983).  "[F]or the most part, the desired liberality is achieved by application of the rule that courts will look beyond the scope of the charge's language to the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge."  Pacheco v. Mineta, 448 F.3d 783, 789 n.9 (5th Cir. 2006).  Nevertheless, the Court need not decide this issue on exhaustion of remedies grounds because Plaintiff's constructive discharge claim fails on the merits, as discussed herein.  The Court therefore assumes, without deciding, that Plaintiff's constructive discharge claim has been sufficiently exhausted at the administrative level.

### iv.    John Moseley Promotion to Acting Police Chief

Finally, it is true that Plaintiff did not specifically reference in her EEOC Charge Commander Moseley's promotion to Acting Police Chief on August 17, 2009. Nevertheless, the Court again concludes that the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," Thomas, 220 F.3d at 395, would include an investigation into this promotion.  Plaintiff generally alleges discrimination, that she has been "denied promotional opportunities," and that "[p]romotions were given to younger White Males and a younger White female."  (D.E. 25-56 at 5.)  This would include promotions to Acting Police Chief.  To conclude

otherwise would elevate form over substance, when such a promotion is well within the realm of Plaintiff's EEOC Charge, even if not spelled out specifically therein.

In sum, Plaintiff cannot bring claims based upon conduct occurring before November 17, 2007 (namely, the April 2007 promotion of Captain Moseley to commander). All other claims are sufficiently exhausted and may be evaluated on their merits. The Court now turns to this analysis.

### b.    Merits

#### i.    Failure to Promote

##### 1.    Prima Facie Case

Defendant first argues that Plaintiff cannot make out a <u>prima facie</u> case of discrimination for failure to promote. A <u>prima facie</u> claim of failure to promote requires a plaintiff to show that: "(1) she was within a protected class; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position she sought was filled by someone outside the protected class." <u>Blow v. City of San Antonio</u>, 236 F.3d 293, 296 (5th Cir. 2001).

Defendant contends that Plaintiff cannot make out this <u>prima facie</u> case because, with the exception of the 2007 commander position, she cannot demonstrate that she "sought any position about which she complains," or with respect to temporary assignments, that "there was a position to which she was denied." Finally, with respect to assignments filled by those of the same national origin, race, sex, or those of the same age or older, Plaintiff cannot demonstrate that someone outside the protected class was selected. Specifically, Defendant notes that John Moseley, Mike Walsh, and David Cook are older than Plaintiff, and Heidi Frese is both Hispanic and female. (D.E. 25 at 11-12.)

Plaintiff responds that no formal application was allowed for these positions, that the temporary assignment was in fact a formal position, and that in each case someone outside at least one protected class was selected.  (D.E. 30 at 9-11.)

As an initial matter, the Court rejects Defendant's argument that Plaintiff cannot show that she "sought" any position.  Defendant itself states that "[t]he positions of Assistant Chief of Police and Police Commander are not positions for which an individual may apply, and applications are **neither sought nor accepted** for said positions."  (D.E. 25 at 2 (emphasis added).)  Promotion to these positions cannot be insulated from discrimination laws simply because individuals may not formally apply for them.  The Fifth Circuit has stated,  "[t]he fact that appellant may not have formally applied for the promotion . . . is not significant in light of the uncontradicted evidence that no formal application was necessary and that applicant was, in fact, considered for the promotions."  Simon v. Honeywell, Inc., 642 F.2d 754, 755 n.3 (5th Cir. 1981).  Mr. Smith himself states that Plaintiff was interviewed and considered for certain positions. (D.E. 25-47 at 5-6, 11.)  Further, there can be little doubt that Plaintiff, as a Captain with over thirty years of experience on the job, would have been in the realm of consideration for all of the promotions at issue, even if there was no formal application process.  The Court is mindful of the need not to "inflexib[ly]" apply the prima facie factors, as the "facts necessarily will vary in Title VII cases."  Id. n.4.  The mere fact that the City filled these positions through a method other than the acceptance of formal applications does not mean that the City can avoid a discrimination claim because no candidate formally "sought" the positions.

Similarly, the Court rejects the contention that, with respect to the temporary positions, "there was a position to which she was denied."  (D.E. 25 at 12.)  The positions, while "temporary" or "acting," were positions nonetheless, with higher pay, benefits, prestige, and responsibilities.  As Plaintiff states in her affidavit, "[c]ommon knowledge and experience is that the [temporary promotion] experience entails a raise in pay throughout the time the person occupies the position.  The added benefits are the experience and prestige in opportunity, because it adds to a resume."  (D.E. 30-3 at 12.)  The fact that the positions may not have been permanent does not alter the outcome.  Plaintiff may certainly state a claim that she was not promoted to that temporary "higher position" due to discriminatory reasons.

Finally, the Court rejects Defendant's argument that Plaintiff cannot show that someone outside the protected class was selected for the positions at issue.  Plaintiff here claims gender, age, race, and national origin discrimination.  Plaintiff's claims could be defeated on this ground if all those selected in place of Plaintiff were also female, Mexican-American, Hispanic, and of the same age or older than Plaintiff.  This is not the case.  For example, the fact that John Moseley and Mike Walsh were older than Plaintiff may negate her age discrimination claim with respect to those positions, but certainly not gender, national origin, or race discrimination.  The same is true of the other positions.  Thus, as to the position filled by Heidi Frese, a female Hispanic, Plaintiff may maintain her claim of age and national origin discrimination, but not gender or racial discrimination.  The Court understands Plaintiff only to state the relevant types of discrimination in the case of each promotion at issue.  Plaintiff has satisfied her prima facie burden.

### 2.    Burden Shifting

Defendant next contends that, even assuming Plaintiff may make out a prima facie case, Defendant can demonstrate legitimate, non-discriminatory reasons for its promotion decisions.  In support, Defendant provides affidavits from Chief Smith and City Manager Escobar, detailing their reasons for the decisions.  (D.E. 25 at 12; D.E. 25-47; D.E. 25-48.)  Plaintiff responds that Defendant's evidence of a legitimate reason is insufficient, and supplies evidence of pretext, in the form of her own affidavit, as well as the affidavits of certain former colleagues.  (D.E. 30 at 11-14.)  Defendant has in turn responded with another affidavit from Chief Smith addressing Plaintiff's claims.  (D.E. 40-7.)

Mr. Smith's affidavit discusses his selection procedures for the promotions at issue.   He states that in April 2007 he conducted a lengthy telephone interview with Plaintiff, but she "seemed disinterested in the concept of community policing," (a concept Smith endorsed) that she "failed to provide committed answers to the questions that [he] posed to her," and that she "seemed unsure about why she was the best candidate for the position and was hesitant about giving assignment preferences."  Smith thus concluded that Plaintiff "was not the best qualified captain for the promotion," and instead believed Moseley to be the most qualified.  (D.E. 25-47.)  Smith provides similar justifications for the other promotion decisions at issue in this case, and outlines the educational and professional experience of each of the selected candidates.  (D.E. 25-47; see also D.E. 30-11 (Defendant response to EEOC Charge discussing applicants).)  Angel Escobar also discusses the promotions in his affidavit.  With respect to the promotion of Mike Walsh to Acting in Charge Police Chief, Escobar states that he was "the best qualified individual

to temporarily assume the full range of the responsibilities of the Chief of Police," and that he "possessed the skill set needed to successfully manage the department." (D.E. 25-48 at 3-4.) Escobar also briefly discusses his temporary assignment of John Moseley to serve as Acting in Charge Police Chief after Mr. Walsh's assignment ended, though he does not explain why Mr. Moseley was selected over others. (D.E. 25-48 at 5.)

In her own affidavit, Plaintiff responds that Smith discriminated against her when considering promotions.[10] She states that she "learned that [Smith] said he wanted to rid the department of the 'Alvarez mentality,' meaning Mexican-Americans and that he wanted to promote younger persons." (D.E. 30-2 at 3.) She also claims that Smith made "racial slurs against Mexican-Americans, including using the term 'bean counters,' and his disrespect for Mexican-American women." (D.E. 30-2 at 13.) In this regard, Plaintiff has presented affidavits from several former colleagues, namely Rodolfo Caceres, Wayne Tisdale, and Domingo Ibarra, all of whom relate certain instances in which Smith is claimed to have made derogatory remarks towards Mexican Americans, females, or older officers while in their presence. (D.E. 30-6; D.E. 30-7; D.E. 44-1; D.E. 44-2.)[11]

Plaintiff also generally discusses her qualifications. (D.E. 30-2 at 9; D.E. 30-5.) Specifically, Plaintiff states that she had thirty-one years of experience with the CCPD, served as the highest ranking officer in a command position during the night shift for two years, and had relevant experience in multiple CCPD divisions over the course of her career. Plaintiff also had a bachelor's degree. She makes the case that she was

---

[10] In its Reply, Defendant has painstakingly numbered every sentence of Plaintiff's Affidavit and raised objections (such as relevance, hearsay, lack of knowledge) with respect to many of the sentences. (D.E. 40 at 10-13.) The Court need not address each objection here. As explained herein, Plaintiff's Affidavit contains sufficient admissible evidence to demonstrate the existence of a genuine issue of material fact as to Plaintiff's discrimination claim, even if certain objections are legitimate.

[11] Such statements by Smith would not qualify as hearsay, pursuant to Federal Rule of Evidence 801(d)(2), admission by party-opponent. See also infra n.16.

substantially more qualified than any of the individuals actually chosen for the promotions, in terms of experience and other qualifications.  (D.E. 30-5; see also D.E. 44-3; 44-4 (discussing duties of officers at night).)  Plaintiff also compares her qualifications to those of Frese, Walsh, and Smith, some of whom had fewer years on the job, or less well-rounded experience.  (D.E. 44 at 7.)  Plaintiff also continues to allege that promotions were done according to a "tap on the shoulder" procedure, whereby the chosen individual was not required to submit an application and others were not seriously considered.  (D.E. 44 at 9.)

Plaintiff discusses her interview with Smith for the position ultimately given to Mr. Moseley.  She portrays it as lasting "no more than ten minutes with Smith doing most of the talking while eating.  He asked nothing about community policing.  In fact, Smith and I never had a conversation about community policing . . . .  Smith asked me why I wanted the promotion, and I responded that I had the experience, knowledge, skills, and abilities to perform the work.  He interrupted my attempts to give him particulars and ended the interview promptly.  Smith's statements in the affidavit reflecting the interview are false." (D.E. 30-2 at 16.) [12]  Plaintiff generally disagrees with Smith's reasons for not promoting her, and claims that his decision was ultimately due to bias.  (D.E. 30-2; D.E. 30-3; see also D.E. 44-5 ("Because my experience placed me in between the person promoted to assistant police chief with seniority and those promoted to commander who had less seniority, Smith's statement that he did not discriminate against me is unbelievable – I am the sole Mexican-American in that scene.  I am also older than the

---

[12] As noted above, the Court has concluded that claims based upon the Moseley promotion in April 2007 cannot be pursued because they are untimely.  Nevertheless, Smith's conduct of the interview is still relevant to the other promotions at issue, since Smith was in charge of these promotions.  His interactions with Plaintiff are relevant in determining whether bias played into the promotions that remain actionable.

three who have less experience.").)  Plaintiff has also included an evaluation form for the period January 1, 2008 to June 30, 2008.  The form states that Plaintiff was in the "Community Policing" Division.  In most categories, including professionalism, self-initiated activity, judgment, dependability, leadership skills, and conflict resolution, Plaintiff is rated as "exceeds standards."  In only two categories, driving skills and preparedness for duty, is she rated as "meets standards," the next level down.  The narrative comments describe Plaintiff as an "effective supervisor," she "motivates and inspires her personnel," and has "insured quality arrests and the procurement of evidence for prosecution."  (D.E. 30-12 at 1-2.)

In his responsive affidavit, Smith continues to refute several of Plaintiff's claims, related to her responsibilities, performance on the job, community policing philosophy, selections to the FBI National Academy, and her perception of the April 2007 interview. (D.E. 40-7.)

Summary judgment in employment discrimination cases is rarely appropriate.  In determining whether a plaintiff has provided sufficient evidence of pretext to defeat summary judgment, "a court should consider the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case."  Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).  "In rare circumstances, a defendant may be entitled to summary judgment 'if the record conclusively reveal[s] some other, nondiscriminatory reason for the [adverse] decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination has occurred.'"  Acker v. Deboer, Inc., 429

F. Supp. 2d 828, 842-43 (N.D. Tex. 2006) (citing <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000)).  Thus, "once an employment discrimination case devolves into nebulous questions of motivation and intent, summary judgment upon the claims is rarely appropriate."  <u>Turco v. Hoechst Celanese Chemical Group, Inc.</u>, 906 F. Supp. 1120, 1126 (S.D. Tex. 1995).  Here, Plaintiff has set out evidence that she was equally or in some cases more qualified than the other applicants,[13] and had thirty-one years on the police force (which included training of one applicant promoted over her), a strong educational background including a bachelor's degree, and other relevant considerations.[14]  Plaintiff has presented the one interview she had with former Chief Smith as only a formality, and has provided evidence that Smith used slurs when referring to Mexican-Americans or Hispanics, had a negative view towards women, and that he wanted to rid the department of older officers.[15]  As the Fifth Circuit has explained, "[o]ral statements constitute evidence of discrimination if they indicate age-based animus and the speaker is principally responsible for the [employment decision]." <u>Sandstad v. CB Richard Ellis, Inc.</u>, 309 F.3d 893, 899 (5th Cir. 2002); <u>see also</u> <u>Russell v. McKinney Hosp. Venture</u>, 235 F.3d 219,  226 (5th Cir. 2000) ("The remarks at issue in this case are certainly appropriate additional circumstantial evidence of age discrimination because their content indicates age animus and the speaker . . . was

---

[13] In this regard, Plaintiff has argued on several occasions that Heidi Frese, a non-Mexican American younger female, was promoted directly from lieutenant to commander, bypassing the rank of captain, and had been on extended leave prior to her promotion.  (D.E. 44 at 6.)

[14] Plaintiff also contends that while other applicants had certain credentials that she lacked, such as training at the F.B.I. Academy or other "command experience," she was not afforded those opportunities due to discrimination.  (D.E. 21 at 11, 13.)  There is not, however, much evidence to support Plaintiff's assertion that such opportunities were provided discriminatorily.

[15] Defendant objects to the Affidavits of Rodolfo Arturo Caceres and Wayne Tisdale, submitted by Plaintiff, on hearsay grounds.  (D.E. 40 at 16-17.) The Court however, finds that most such statements of Smith directly witnessed by the affiants would not be considered hearsay, as they constitute admissions by Defendant's agent.  Fed. R. Evid. 801(d)(2).  Nevertheless, even if most of the statements were inadmissible hearsay, this would not change the outcome on summary judgment.

primarily responsible for Russell's termination.").  The same rule would certainly apply to remarks demonstrating racial or gender based animus.

There is sufficient evidence of pretext to survive summary judgment.  Plaintiff's evidence establishes a genuine issue of material fact as to whether the promotion decisions were motivated by discrimination (be it age, gender, national origin, or racial discrimination).

In the end, Plaintiff's claims of discrimination represent a disputed factual issue that must be resolved by a jury, not the Court on summary judgment.

### ii.      Hostile Work Environment

A plaintiff may establish a Title VII violation based on discrimination creating a hostile work environment.  To establish a hostile working environment claim, a plaintiff must prove: "(1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on [gender, race, age, or national origin]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."  Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002); see also Celestine, 266 F.3d at 353.  "For harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Ramsey, 286 F.3d at 268 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  The Supreme Court has explained that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the

circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required."  Harris, 510 U.S. at 23.

Defendant contends that there is no evidence whatsoever that Plaintiff suffered any workplace harassment of any kind, and has made only conclusory statements to this effect.  (D.E. 25 at 15.)  Plaintiff responds with an affidavit describing what she states was "an environment burdened with systemic and systematic discrimination, and intentional and retaliatory discrimination that led to her constructive discharge."   Thus, there is a fact issue on this as well, Plaintiff concludes.  (D.E. 30 at 14-15.)

The law in this Circuit is clear that Plaintiff's conclusory statements in her own affidavit are not competent summary judgment evidence and do not create a genuine issue of material fact.   See Grizzle v. Travelers Health Network, Inc., 14 F.3d 261, 268 (5th Cir. 1994) ("The only evidence supporting [plaintiff's] claim regarding her second complaint . . . was [plaintiff's] own self-serving generalized testimony stating her subjective belief that discrimination occurred.  Such is simply insufficient to support a jury verdict in plaintiff's favor."); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994) ("Needless to say, unsubstantiated assertions are not competent summary judgment evidence.").  Moreover, in the hostile work environment context, the affidavit only makes a vague reference to "racial slurs and derogatory treatment of women."  (D.E. 30-3 at 10.)

While Plaintiff has presented the affidavits of two former colleagues, Rodolfo Caceres and Wayne Tisdale, in which the affiants relate certain instances in which Smith is claimed to have made derogatory remarks towards Mexican Americans, they do not claim that Plaintiff heard these statements.  (D.E. 30-6; D.E. 30-7.)

Plaintiff cannot make out a prima facie case because she has not presented sufficient summary judgment evidence that any conduct at issue was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  Ramsey, 286 F.3d at 268 (quoting Harris, 510 U.S. at 21).  As such, Plaintiff's hostile work environment claim must be dismissed.

### iii.      Disparate Treatment and Disparate Impact

To state a prima facie disparate treatment claim, Plaintiff must provide evidence that she "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) . . . shows that others similarly situated were treated more favorably."  Okoye v. Univ. of Texas Houston Health Science Ctr., 245 F.3d. 507, 512-13 (5th Cir. 2001); see also Willis v. Coca Cola Enterprises, Inc., 445 F.3d 413, 420 (5th Cir. 2006).   In contrast, to state a prima facie disparate impact claim, a plaintiff must show: "(1) an identifiable, facially neutral personnel policy or practice; (2) a disparate effect on members of a protected class; and (3) a causal connection between the two."  McClain v. Lufkin Industries, Inc., 519 F.3d 264, 275-76 (5th Cir. 2008) (citing Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988)).   A defendant may "rebut a prima facie case of disparate impact by demonstrating that a challenged practice is a business necessity."  Crawford v. U.S. Dep't of Homeland Sec., 245 Fed. Appx. 369, 379 (5th Cir. 2007) (citing Pacheco v. Mineta, 448 F.3d 783, 787

(5th Cir. 2006).)  The Fifth Circuit has explained the difference between the causes of action as follows: "[d]isparate-treatment discrimination addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin.  In such disparate-treatment cases, proof and finding of discriminatory motive is required.  Disparate-impact discrimination, on the other hand, addresses employment practices or policies that are facially neutral in their treatment of these protected groups, but, in fact, have a disproportionately adverse effect on such a protected group.  In disparate-impact cases, proof or finding of discriminatory motive is not required. . . . ."  Pacheco v. Mineta, 448 F.3d 783, 787 (5th Cir. 2006) (citations omitted).

Defendant states that it is entitled to summary judgment on Plaintiff's disparate treatment claim because "there is no evidence that [Plaintiff] suffered any adverse employment action or that similarly situated others were treated more favorably than she was treated."  (D.E. 25 at 15.)  Regarding the disparate impact claim, Defendant argues only that Plaintiff cannot "establish the required elements," and thus summary judgment is warranted.  (D.E. 25 at 16.)  Plaintiff disagrees on both counts.  (D.E. 30 at 15-16.)

With respect to disparate treatment, the Court can quickly reject Defendant's argument that Plaintiff did not suffer any "adverse employment action."  It is well established that "the denial of a promotion *is* an actionable adverse employment action." See, e.g., Alvarado v. Texas Rangers, 492 F.3d 605, 612 (5th Cir. 2007); see also Wojciechowski v. Nat'l Oilwell Varco, L.P., __ F. Supp. 2d __, 2011 WL 121739, at *15 ("In the context of discrimination claims [as opposed to retaliation], adverse employment reactions are defined by the Fifth Circuit as 'ultimate employment decisions,' such as

'hiring, granting leave, discharging, promoting and compensating.'").).  Plaintiff also has evidence that she "was treated less favorably than was a similarly situated employee outside the protected class."  Toronka v. Continental Airlines, Inc., 2011 WL 493101, at *3 (5th Cir. Feb. 14, 2011); see also, e.g., Lyles v. Texas Alcohol Beverage Comm'n, 379 Fed. Appx. 380, 383 (5th Cir. 2010) ("[I]n the case of a disparate treatment claim, [Plaintiff must show] that others similarly situated, but outside the protected class, were treated more favorably.").  As discussed above, Plaintiff has demonstrated that others within the CCPD of the same or lesser rank were treated more favorably (through their promotions) than was Plaintiff.  These individuals had similar, or in some cases lesser, credentials and qualifications.  This element of the prima facie case is certainly established.  As Defendant only moves for summary judgment based upon the third and fourth elements of the prima facie case, and the Court finds these elements satisfied, Plaintiff's disparate treatment claim may proceed.

With respect to disparate impact, however, the Court finds that Plaintiff has not met the required elements of the prima facie case.  The Supreme Court has explained that "a prima facie case of disparate-impact liability [is] essentially a threshold showing of a significant statistical disparity and nothing more."  Ricci v. DeStefano, __ U.S. __, 129 S. Ct. 2658, 2678 (2009).  Plaintiff has identified (1) a facially neutral policy of promotions within the CCPD and (2) a disparate impact upon Mexican-Americans (none were promoted above captain) in Plaintiff's last two years on the job.  The problem, however, is that Plaintiff has not presented any evidence of causation.   Generally, a plaintiff must "establish causation by offering statistical evidence to show that the practice in question has resulted in prohibited discrimination."  Stout v. Baxter Healthcare Corp., 282 F.3d

856, 860 (5th Cir. 2002); see Collins-Pearcy v. Mediterranean Shipping Co. (USA) Inc.,

698 F. Supp. 2d 730, 741-42 (S.D. Tex. 2010).  A plaintiff must make "a showing of a

**substantial statistical disparity** between protected and non-protected workers in regard

to employment or promotion."  Stout, 282 F.3d at 860 (internal quotation marks omitted;

emphasis added).[16]  Thus, Plaintiff has the burden of producing "statistical evidence

comparing the effects of a challenged policy on protected and unprotected groups of

employees."  Id. at 861.  Plaintiff, however, has presented no statistical analysis of any

kind to prove causation.  She has provided no expert reports, no comparisons between

promotions during the relevant time period and at other times, or anything else from

which a meaningful analysis can be drawn.  Without this evidence, Plaintiff cannot

establish her prima facie burden and her disparate impact claim must be dismissed.

    To recapitulate, the Court finds that Plaintiff has defeated Defendant's motion for

summary judgment as to her claim of disparate treatment, but not as to her claim of

disparate impact.  Only the disparate treatment claim may proceed.

### iv.    Constructive Discharge

    Defendant argues that Plaintiff's constructive discharge claim must fail on the

merits because she cannot demonstrate that she was "forced" to retire, or that "working

conditions were so intolerable that a reasonable employee would be compelled to resign."

(D.E. 25 at 16-17.)  In her affidavit, Plaintiff responds that "[t]he City's failure to provide

a  workplace  free  of  discrimination  made  it  impossible  for  me  to  continue  law

---

[16] While the Fifth Circuit has recognized that a plaintiff may prove her prima facie case without statistical evidence in some limited circumstances, this would not apply here.  See Garcia v. Woman's Hospital of Texas, 97 F.3d 810, 813 (5th Cir. 1996) (holding that statistical evidence was not required in a disparate impact case of pregnancy discrimination, and stating, "[i]f all or substantially all pregnant women would be advised by their obstetrician not to lift 150 pounds, then they would certainly be disproportionately affected by this supposedly mandatory job requirement for [employees] at the Hospital. Statistical evidence would be unnecessary if Garcia could establish this point.").

enforcement work.  In fact, the daily risks of law enforcement coupled with the racial, gender, and age based discrimination by Smith against me made it impossible to continue working where, every day, my life was on the line and he held the weapon to destroy my career, which he eventually did."  (D.E. 30-2 at 8.)

As the Fifth Circuit has explained, "[a] constructive discharge occurs when the employer makes working conditions so intolerable that a reasonable employee would feel compelled to resign."  Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 771 (5th Cir. 2001); Ward v. Bechtel Corp., 102 F.3d 199, 202 (5th Cir. 1997).  "Courts consider a variety of factors, including the following: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off whether the offer was accepted or not.  The test is objective. The question is not whether [the plaintiff] felt compelled to resign, but whether a reasonable employee in her situation would have felt so compelled."  Hunt, 277 F.3d at 771-72.

The Court understands Plaintiff's constructive discharge claim to be based upon Defendant's repeated failure to promote her.  She contends that she retired in November 2008 as a result of being repeated discriminatorily bypassed for promotions, mostly in September 2008.  Notably, in her amendment submitted to the EEOC, she states only, "I believe the City has also engaged in conduct to chill my right to continue to investigate past and current discriminatory practices in the police department.  Had the City not discriminated against me, I would still be working there."  (D.E. 25-59.)  The Fifth Circuit, however, has held that such a claim is insufficient to state a constructive

discharge claim as a matter of law.  As the court has explained, "[c]onstructive discharge requires a greater degree of harassment than that required by a hostile environment claim. **Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote**."  Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (emphasis added).  As Plaintiff's constructive discharge claim is based upon Defendant's repeated failures to promote her, it must therefore be dismissed on the merits.

### C.    Retaliation

To state a retaliation claim, "[plaintiff] must first demonstrate a prima facie case . . . .  The elements of her prima facie evidentiary showing are 1) that she engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action.  If [plaintiff] successfully establishes her prima facie case, the burden then shifts to the [defendant] to state a legitimate non-retaliatory reason for its action. At this point, any presumption of retaliation drops from the case, and [plaintiff] must show that the [defendant's] stated reason is actually a pretext for retaliation."  Septimus v. Univ. of Houston, 399 F.3d 601, 610-11 (5th Cir. 2005).

Here, Plaintiff bases her retaliation claim upon the City's release of her EEOC filings, along with her date of birth, to the media.  Defendant argues that this cannot establish a retaliation claim because (1) the release of Plaintiff's EEOC filings, or her birth date, does not constitute an adverse personnel action, and (2) Plaintiff cannot establish a causal link between any protected activity and any materially adverse event. (D.E. 25 at 17-18; D.E. 40 at 8-9.)  Defendant has submitted an affidavit from Ronald

Bounds, an attorney employed by Corpus Christi.  He states, "[a]fter reviewing the request and the requested information, it was my good faith belief that the Notice of Charge of Discrimination . . . issued to the City relating to Ms. Hernandez and the Charge of Discrimination . . . made by Ms. Hernandez were responsive to the open records request and were neither confidential by law nor protected from disclosure by any exception in the Texas Public Information Act . . . ."  (D.E. 25-51 at 1-2.)    He also states, "[m]y decisions to release the above-referenced Notice of Charge of Discrimination and Charge of Discrimination were not made to retaliate against Ms. Hernandez for filing a discrimination charge against the City.  My decisions were based on my good faith belief that the [documents] were responsive to the open records requests . . . ."  (D.E. 25-51 at 3.)  Plaintiff responds to this affidavit with her own statement that "[c]ommon sense was all Bounds needed to not release my private information.  For the same reason he gave me, because of possible litigation, he did not have to release it to the media.  His conduct demonstrates that the City retaliates when an employee files a complaint."  (D.E. 30-3 at 11.)

       As an initial matter, the Court considers whether the release of Plaintiff's EEOC charge (along with her birth date) to the media constitutes an "adverse employment action."  An "adverse employment action" for purposes of a retaliation claim exists when "the employer's actions [are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006); see Smith v. Harvey, 265 Fed. App. 197, 201 (5th Cir. 2008) (citing Burlington).  The Supreme Court has explained, "the anti-retaliation provision does not confine the actions and harms it forbids

to those that are related to employment or occur at the workplace. We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant.  In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 67.   Putting aside the question of whether release of an employee's date of birth could "dissuade a reasonable worker" from making a discrimination claim, the Court must consider whether an event that occurred after Plaintiff's retirement can constitute an adverse employment action.  (See D.E. 40 at 8.) There does not appear to be a direct statement from the Fifth Circuit on this point.  In the context of the ADEA, however, the Fifth Circuit stated that the ADEA retaliation provision is "interpreted broadly: it includes a former employee so long as the alleged discrimination is related to or arises out of the employment relationship."  E.E.O.C. v. Cosmair, Inc., 821 F.2d 1085, 1088 (5th Cir. 1987).  One district court, following this lead, held that "a plaintiff may file a Title VII retaliation action against a previous employer for retaliatory conduct occurring after the end of the employment relationship when the retaliatory act is in reprisal for a protected act within the meaning of 42 U.S.C. § 2000e–3(a) and arises out of or in relation to the employment relationship . . . ." Fields v. Phillips School of Business and Technology, 870 F. Supp. 149, 153 (W.D. Tex. 1994). Nevertheless, the Burlington standard itself focuses on adversity to the "reasonable employee," or the "reasonable worker," 548 U.S. at 67, perhaps implying that the challenged activity must have occurred while the individual was still employed.  An event that occurs almost nine months after an individual has left his or her job would

appear unlikely to constitute an "adverse employment action," and thus should not be able to form the basis of a retaliation claim.

Even if Defendant's release of Plaintiff's EEOC Charge (including her date of birth) after her retirement could constitute an adverse employment action, the Court finds that summary judgment is warranted because Plaintiff cannot satisfy the causation element of her claim. To establish the causation element of a retaliation claim under Title VII, a plaintiff must present either "direct evidence of retaliation" or "circumstantial evidence creating a rebuttable presumption of retaliation." Fabela v. Socorro Indep. Sch. Dist., 329 F.3d 409, 414-15 (5th Cir.2003). Plaintiff has neither. While Plaintiff has presented an affidavit with conclusory claims that she felt the release to be retaliatory in nature, it is well established that "a plaintiff's testimony may establish retaliation, [but] such testimony is only sufficient if it proves the fact of intentional retaliation without inference or presumption." Washburn v. Harvey, 504 F.3d 505, 510 (5th Cir. 2007). Plaintiff provides no specifics or direct evidence that the release of the EEOC charge was meant to be retaliatory.

Plaintiff also lacks sufficient circumstantial evidence to establish retaliation. Plaintiff argues that "[t]he causal link is, that but for plaintiff's filing her discrimination complaint, the City would not have published it to the media and violated her privacy right in her birthdate." (D.E. 30 at 18.) The Court rejects this circular argument. Of course, the City could not have released Plaintiff's EEOC charge without her first having filed it; otherwise, there would have been nothing to release. More is needed to establish causation. As the Fifth Circuit has explained, the causation element may be proved by temporal proximity between the protected activity and the adverse employment action

when they occur "very close" in time.  Washburn, 504 F.3d at 511.  Here, Plaintiff filed her EEOC charge of discrimination in September 2008, and her EEOC Charge was released in June 2009 (approximately nine months later), after open records requests were made by members of the media.  The Fifth Circuit has found that gaps of eight or nine months between a protected activity and an adverse event negate a finding of causation. See, e.g., Roberts v. Unitrin Specialty Lines Ins. Co., 2010 WL 5186773, at *4 (5th Cir. Dec. 17, 2010) ("[Plaintiff] was terminated approximately nine months after she alleges that she first complained about Shumway and approximately eight months after she alleges that she next complained about Shumway, complained to Dickey regarding her back injury, and complained about Shumway's bet. The several-month spans between the alleged protected activities and her termination negate any argument that a causal connection existed between the activities and the termination.") (citing Washburn); Ajao v. Bed Bath and Beyond, Inc., 265 Fed. Appx. 258, 265 (5th Cir. 2008) (per curiam) ("temporal proximity of four months is not close enough, without additional supporting summary-judgment evidence, to establish a causal connection"); Russell v. Univ. of Tex., 234 Fed Appx. 195, 206 (5th Cir. 2007) ("Numerous courts have held that temporal proximity evidence alone cannot support an inference of causation when there is a four-month gap between the protected activity and the adverse employment action."); Jimerson v. Garrett Aviation Services, LLC, 2010 WL 5067692, at *5 (S.D. Tex. Dec. 6, 2010) ("Plaintiff's termination six or eight months after he alleged racial harassment and filed an EEOC complaint was too distant in time for the Court to infer retaliation on timing alone.").[17]  No other facts exist from which causation may be inferred.

---

[17] Plaintiff also relies upon the Section 552.103(a), (c) exception, which exempts from disclosure documents "related to litigation."  Tex. Gov. Code § 552.103(a), (c); D.E. 30 at 20.  Plaintiff states,

As Plaintiff has not presented sufficient evidence of retaliation based upon the release of her EEOC charge to the media, summary judgment must be granted with respect to this claim.

### D.    Declaratory Judgment

Plaintiff seeks a declaratory judgment under the Texas Declaratory Judgments Act that the City violated her privacy interest in her date of birth by releasing it to the media, and such disclosure was not authorized under state or federal law.   (D.E. 21 at 35-36.) Defendant contends that it is entitled to summary judgment because there is no evidence that the disclosure was unauthorized, and there is no exception to applicable law that precludes birth dates from disclosure.  (D.E. 25 at 18; D.E. 40 at 8-9.)  Plaintiff responds with recent case law from the Texas Supreme Court regarding privacy interests in birthdates and case law upon which it is based.   She contends that "the City had substantial state and federal precedent to deny access to plaintiff's EEOC complaint and birth date to the media and to the public."  (D.E. 30 at 19-20.)

As an initial matter, the Texas Declaratory Judgment Act is inapplicable in this case because subject matter jurisdiction is premised upon federal question jurisdiction, 28 U.S.C. § 1331.  Self-Insurance Institute of America, Inc. v. Korioth, 53 F.3d 694, 697 (5th Cir. 1995) ("[T]he Texas DJA is inapplicable. Jurisdiction in this case is under 28 U.S.C.A. § 1331 . . . , not diversity where state law applies.").   As one court has explained, "[t]he Court cannot award relief pursuant to the Texas Declaratory Judgment

---

"because the City did not rely on this provision, a rationale jury could reasonably find that the City retaliated against plaintiff for filing the charge."  (D.E. 30 at 20.)  The Court does not believe this sufficient to support a claim of retaliation.   Moreover, it has been established that "[o]nce information has been obtained by all parties to a litigation through discovery or otherwise, no section 552.103(a) interest exists with respect to that information."  Abbott v. GameTech Int'l, Inc., 2009 WL 1708815, at *2 (Tex. App. – Austin June 17, 2009).  Here, the EEOC charge was already in the possession of both parties, and Section 552.103(a) may not have applied to prevent disclosure.

Act because declaratory judgment is procedural, not substantive, and federal courts apply their own procedural rules." Rhodes v. Prince, 2006 WL 954023, at *4 (N.D. Tex. Apr. 11, 2006).  The Court, however, will interpret this claim as being brought under the Declaratory Judgment Act, 28 U.S.C. § 2201.[18]

The Texas Supreme Court recently addressed the issue of disclosure of public employees' dates of birth in Texas Comptroller of Public Accounts v. Attorney General of Texas, __ S.W.3d __, 2010 WL 4910163 (Tex. Dec. 3, 2010).  In that case, the Dallas Morning News invoked the Texas Public Information Act, seeking a copy of the state Comptroller's payroll database for state employees.  The Comptroller responded with the full name, age, race, sex, salary, agency, job description, work address, date of initial employment, pay rate, and work hours for each employee.  The Comptroller, however, withheld dates of birth pursuant to Government Code Section 552.101.  2010 WL 4910163, at *1.  The Texas Supreme Court addressed whether the Public Information Act requires redaction of birthdates.  The court held, "the state employees' privacy interest substantially outweighs the negligible public interest in disclosure here. Consistent with the federal courts and those in other states, we conclude that **disclosing employee birth dates constitutes a clearly unwarranted invasion of personal privacy, making them exempt from disclosure under section 552.102**."  2010 WL 4910163, at *10 (emphasis added).  Not surprisingly, Plaintiff relies heavily on this decision.  (D.E. 30 at 19-20; see also D.E. 44 at 23.)

---

[18] The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  Federal courts have "discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).

Nevertheless, <u>Texas Comptroller of Public Accounts v. Attorney General of Texas</u> was decided on December 3, 2010, while the disclosure at issue in this case occurred in June 2009, without the benefit of this decision.  The City cannot be held responsible for failing to anticipate how the Texas Supreme Court would come out on this issue.  While Plaintiff argues that even before the decision, the City "had substantial state and federal precedent to deny access to plaintiff's EEOC complaint and birth date to the media and to the public," this does not change the analysis.  (D.E. 30 at 19.)  Even the appellate court in <u>Texas Comptroller</u>, prior to reversal, stated that "the speculative and unproven threat of identity theft is **insufficient to exempt date-of-birth information from disclosure under the Act**," and concluded that "[t]he Comptroller therefore failed to establish as a matter of law that the release of state employees' dates of birth is an intrusion upon their seclusion entitling the information to be withheld under the confidential-information exception to the Act."   244 S.W.3d 629, 637 (Tex. App. – Austin 2008) (emphasis added).  If anything, until the reversal by the Texas Supreme Court in December 2010, applicable law supported the conclusion that dates of birth were not exempted from disclosure.

Because Plaintiff has not shown that Defendant violated her privacy interest in her date of birth by publicizing it to the media, or that such disclosure was not authorized under state or federal law, the Court cannot grant her declaratory judgment request.  This request must be dismissed.

**E.      Claims Pursuant to 42 U.S.C. §§ 1981, 1983**

Defendant raises several procedural and substantive arguments with respect to Plaintiff's Section 1981 and 1983 claims.  First, it contends that such claims relating to

conduct occurring before December 30, 2008 are barred by the applicable two-year statute of limitations. Second, Defendant argues that Section 1981 does not provide a cause of action against local government entities. Third, Defendant argues that these claims fail on the merits, as Plaintiff cannot make out a claim of race discrimination, nor a violation of her due process and equal protection rights. Finally, Defendant states that Plaintiff cannot establish that the City "has a custom, policy, or practice of depriving employees of their rights to due process or equal protection," as is required for a Section 1983 claim. (D.E. 25 at 19-20; see also D.E. 40 at 7-8.) Plaintiff responds that her claims are timely for the same reasons as addressed with regards to Title VII, that Section 1981 claims are "encompassed by section 1983 claims, and both are analyzed under section 1983," that there is evidence of racial discrimination (as discussed with respect to Title VII), and that she does not claim a property interest. (D.E. 30 at 20-22.) As to the merits, Plaintiff argues that the City "has a custom, policy or practice of discouraging females from reporting discrimination in the workplace and treating females disrespectfully and/or disparagingly based on their gender," and that it "has a custom, policy, or practice of failing to properly investigate allegations of discrimination." (D.E. 44 at 17-18.) She also argues that the City "fails to properly discipline perpetrators of misconduct offensive to females and perpetrators of discrimination," and that it "ratified [Smith's] conduct as police chief and allows him unbridled authority to continue to the present." (D.E. 44 at 18-19.)

As an initial matter, Defendant is correct that that "Section 1981 does not provide a remedial cause of action against local government entities and local government officials in their official capacities." Patel v. Midland Mem. Hosp. and Med. Ctr., 298

F.3d 333, 341 n.16 (5th Cir. 2002) (citing Oden v. Oktibbeha Cty., 246 F.3d 458, 463 (5th Cir. 2001)); Coronado v. San Patricio Cty., 2011 WL 923458, at *4 (S.D. Tex. Mar. 15, 2011) ("The Fifth Circuit has held, however, that Section 1983 remains the exclusive federal remedy against state actors for violations of Section 1981."). Such claims, however, may be asserted under Section 1983. Coronado, 2011 WL 923458, at *4; see also Turay v. Harris County, Texas, 2011 WL 841510, at *6 (S.D. Tex. Feb. 17, 2011) ("[C]laims that a municipality violated § 1981 must be brought under § 1983.").[19]

The Court next addresses the issue of the City's liability under Section 1983. (D.E. 25 at 20.) A municipality is a "person" subject to suit under Section 1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). A local government entity may be sued "if it is alleged to have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Alternatively, municipal liability may attach where the constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval." Zarnow v. City of Wichita Falls, Tex., 614 F.3d 161, 166 (5th Cir. 2010) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 121 (1988); Monell).) "[M]unicipal liability under Section 1983 requires proof of three elements: [1] a policymaker; [2] an official policy; and [3] a violation of constitutional rights whose moving force is the policy or custom." Id. Thus, "[t]he elements of the Monell test exist to prevent a collapse of the municipal liability inquiry into a respondeat superior analysis. A municipality may not be subject to liability merely for employing a tortfeasor.

---

[19] Defendant has also raises timeliness issues with respect to certain aspects of Plaintiff's Section 1983 claim. (D.E. 25 at 19; D.E. 40 at 8.) Because the Court concludes that all Section 1983 claims fail on the merits, it declines to address the timeliness argument.

41 / 48

Municipal liability requires deliberate action attributable to the municipality that is the direct cause of the alleged constitutional violation." Id. (citations omitted).

Assuming without deciding that Plaintiff can establish the existence of a "policymaker," such as Smith or Escobar, she has failed to demonstrate the existence of an "official policy," an essential element of a Section 1983 claim.  The Fifth Circuit has defined the phrase "official policy" as either:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984); see Evans v. City of Houston, 246 F.3d 344, 358 (5th Cir. 2001) (citing Brown v. Bryan County, 219 F.3d 450, 457 (5th Cir. 2000)); see also Juarez v. Brownsville Indep. Sch. Dist., 2010 WL 1667788, at *9-10 (S.D. Tex. Apr. 23, 2010) (citing Webster).

Here, Plaintiff does not provide any evidence of an "official policy" under either definition.  It is reasonably clear that Plaintiff does not rely upon the first definition, as there is no policy statement officially "adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority."  Webster, 735 F.2d at 841.  In fact, Plaintiff even states at times that the City's promotional policies are consistent with applicable law.  (See, e.g., D.E. 30-2

at 7 ("[N]othing in the City's policies and procedures for any department authorizes a department head, including Smith, to discriminate in any manner for any reason against any employee.").  In her Surreply, she alleges that Smith did not comply with the "City's mandatory policy in Part 1, Article VII, Section 1 of the Corpus Christi City Charter," which provides for "a personnel system based on merit," and prohibits discrimination. (D.E. 44 at 3.)  She also notes the City's "Declaration of Policy," which provides that it is city policy "for each person to obtain employment without regard to race, color, religion, sex, national origin, disability, or age," and states that discrimination on such bases "constitutes an unjust denial or deprivation of such inalienable rights which is within the power and the proper responsibility of government to prevent."  (D.E. 44 at 3.)  She takes Smith's statement that he "had the right to determine how to make appointments and assignments" as evidence that the "City apparently excused him from compliance with anti-discrimination policies."  (D.E. 44 at 3.)  Plaintiff goes too far.  There is simply no evidence that the City somehow excused Smith from complying with its anti-discrimination policies.  If anything, Plaintiff's arguments demonstrate that Smith failed to act in accordance with City policy, not that official City policy is itself to blame.

As to the second definition, Plaintiff has failed to provide evidence of a "persistent, widespread practice" of discrimination.  Webster, 735 F.2d at 841.  She has provided her own affidavit, stating her belief as to the existence of an official policy, and in her Surreply has made some additional attempts to demonstrate an official policy. (D.E. 44 at 18.)  Such evidence of an official policy is rarely sufficient to survive summary judgment.  For example, in Erves v. City of Dallas, 2004 WL 904122, at *4 (N.D. Tex. Apr. 27, 2004), the court considered a Section 1983 race discrimination claim

brought by the plaintiff, an African-American police officer with the City of Dallas.  The court found that summary judgment on this claim was appropriate, explaining, "[t]he only 'policy' alleged by Erves, absent an officially documented policy or custom, is that Dallas 'has a longstanding (unwritten, but well recognized) practice of custom of discriminating and retaliating against minority officers.' . . .  [T]he record before the Court documents no such examples of 'persistent and widespread' violations; indeed, the evidence contains no documentary examples of racial discrimination, harassment, discriminatory intent, or retaliation against particular individuals.  Erves' summary judgment evidence suggests only that Erves and three affiants believe that the Dallas Police Department is a racist entity.  Such evidence simply does not suffice to establish a persistent, widespread practice . . . ."  2004 WL 904122, at *4; see also Okon v. Harris County Hosp. Dist., 2010 WL 3069805, at *12 (S.D. Tex. Aug. 4, 2010) (dismissing Section 1983 race discrimination claim because "there is simply no record evidence that it was a persistent, widespread practice that was so common and well settled as to constitute a custom that fairly represents Defendant's policy."); Bluitt v. Houston Indep. Sch. Dist., 236 F. Supp. 2d 703, 724 (S.D. Tex. 2002) (dismissing Section 1983 claim because the plaintiff presented no evidence that the defendant "has an official policy authorizing . . . discrimination," or that "it is the well-established custom of [defendant], its principals, or other employees to engage in such practices.").  In her summary judgment response, Plaintiff focuses mainly upon the promotion decisions of former Chief of Police Smith and City Manager Escobar, during the final two years of her employment with CCPD.  Plaintiff also discusses the instances in which she was bypassed for a promotion and provides anecdotal evidence of a few others who she

claims were also treated in the same manner.  No other affidavits, declarations, depositions, documentary evidence, or other support is provided for her allegation that the City had a "persistent, widespread practice" of discrimination.  In short, Plaintiff has not sufficiently shown the existence of an official policy, necessary for Section 1983 liability.  As Plaintiff cannot establish her prima facie case, this claim must be dismissed.[20]

### F.    Breach of Contract

Finally, Defendant seeks summary judgment as to Plaintiff's breach of contract claim, on the basis that the City did not enter into any contract with Plaintiff.  (D.E. 25 at 21.)  In response, Plaintiff contends that the City has breached its collective bargaining agreement by discriminating against her.  (D.E. 30 at 22.)

In Texas, the essential elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; (4) damages sustained as a result."  Winchek v. Am. Exp. Travel Related Servs. Co., Inc., 232 S.W.3d 197, 202 (Tex. App. – Houston [1 Dist.] 2007).  Suits against governmental entities for breach of contract are permitted

---

[20] Plaintiff also alleges a due process violation.  (D.E. 21 at 37.)  To assert a due process violation, "a threshold requirement is that the plaintiff demonstrate either a liberty or a property interest in her public employment.  Without such an interest in public employment, no right to due process accrues."  Moore v. Miss. Valley State Univ., 871 F.2d 545, 548 (5th Cir. 1989); see also Baldwin v. Daniels, 250 F.3d 943, 946 (5th Cir. 2001) ("To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.").  No liberty interest is at issue in this case.  Moreover, Plaintiff herself states in her response that she "does [not] claim a property interest."  (D.E. 30 at 21.)  As the Fifth Circuit has explained, "[t]o enjoy a property interest in employment, an employee must 'have a legitimate claim of entitlement' created and defined 'by existing rules or understandings that stem from an independent source such as state law . . . .'"  Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010) (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Plaintiff neither asserts a property interest in a promotion, nor has she alleged any legitimate claim of entitlement to a promotion under existing laws.  See generally Curtis v. University of Houston, 940 F. Supp. 1070, 1078 (S.D. Tex. 1996) ("Although Curtis has a property interest in his status as a tenured associate professor, he has no property right to the promotion.").  Because Plaintiff has asserted neither a liberty nor a property interest, her due process claim must be dismissed.

when that entity is alleged to have failed to fulfill contract terms.  Tex. Local Gov. Code
§ 271.152 ("A local governmental entity that is authorized by statute or the constitution
to enter into a contract and that enters into a contract subject to this subchapter waives
sovereign immunity to suit for the purpose of adjudicating a claim for breach of the
contract, subject to the terms and conditions of this subchapter.").

Here, Plaintiff's breach of contract claim in the First Amended Complaint
appears to be based upon an individual contract between the City and Plaintiff, as well as
a collective bargaining agreement between the City and the union, including Plaintiff.
Plaintiff claims that the City, inter alia, agreed not to discriminate in these contracts, but
breached these agreements by failing to promote Plaintiff.  (D.E. 21 at 38-39.)   In her
Response, however, Plaintiff references only the collective bargaining agreement.  (D.E.
30 at 22 ("By discriminating against plaintiff, the City breached the collective bargaining
agreement.").)  Indeed, Plaintiff has not even submitted as summary judgment evidence a
contract between herself and the City.  Plaintiff can thus not make out a breach of
contract claim based upon any individual contract between the parties to this lawsuit.

In contrast, there is no dispute that there was a valid collective bargaining
agreement between the City and the Corpus Christi Police Officer's Association ("CBA")
at all relevant times (the agreement expired on July 31, 2010). (D.E. 25-6.)  Even though
the contract was not directly between Hernandez and the City, Hernandez was a third
party beneficiary under the collective bargaining agreement.  The Texas Supreme Court
in City of Houston v. Williams recently addressed an individual firefighter's standing
under a collective bargaining agreement with a governmental entity, and concluded:
"[f]irefighters have standing as third-party beneficiaries under the [collective bargaining

agreement (CBA)] . . . . [I]t was negotiated by the Union with the clear intent to benefit the Firefighters.  Significantly, collective bargaining agreements are recognized as a type of third-party beneficiary contract."  City of Houston v. Williams, __ S.W.3d __, 2011 WL 923980, at *16 (Tex. Mar. 18, 2011).  Thus, the court concluded that "[f]irefighters have standing as third-party beneficiaries to enforce the CBA."  Id.  The same reasoning applies here.  Simply because Hernandez was not personally a party to the CBA does not mean that she cannot bring a breach of contract claim.

The CBA, Article 13, outlines the procedures for promotions.  (D.E. 25-6 at 36-43.)   Other than a vague argument that there is "no evidence of a breach of contract," (D.E. 25 at 21) the City does not meet its burden on summary judgment as to this claim. As discussed above in the context of Title VII, Plaintiff has presented evidence that she met the qualifications for the Commander and Assistant Chief positions (as outlined in the CBA), but she was denied promotions due to discrimination.  There remains a genuine issue of material fact as to whether the City complied with the promotion procedures outlined in the CBA.

Summary judgment as to Plaintiff's breach of contract claim is denied.

## V.    Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  (D.E. 25.)

The following causes of action against Defendant City of Corpus Christi are DISMISSED: (1) Title VII, ADEA, and TCHRA race, gender, age, and national origin discrimination claims for failure to promote (for conduct occurring before November 20,

2007); (2) 42 U.S.C. §§ 1981, 1983 claims; (3) Hostile work environment; (4) Disparate impact; (5) Constructive discharge; (6) Retaliation; and (7) Declaratory Judgment.

The following causes of action against Defendant City of Corpus Christi are RETAINED: (1) Title VII, ADEA, and TCHRA race, gender, age, and national origin discrimination claims for failure to promote (for conduct occurring after November 20, 2007); (2) Disparate treatment; and (3) Breach of contract.

SIGNED and ORDERED this 17th day of May, 2011.

Janis Graham Jack
United States District Judge